UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                       **DECISION AND ORDER**
                                                 08-CR-194S

JOHN E. MAYE,

                Defendant.

## I. INTRODUCTION

Presently before this Court is the government's motion for entry of a preliminary order of forfeiture against Defendant John E. Maye. (Docket No. 268.) The government contends that forfeiture is proper and required as the result of Maye's convictions after trial for distributing and dispensing controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of 21 U.S.C. § 841 (a)(1). (Docket No. 252.) Maye, who elected to have this Court determine forfeiture, contends that the government has failed to meet its burden of proving, by a preponderance of the evidence, that it is entitled to the preliminary order of forfeiture that it seeks.

For the reasons explained below, this Court finds that the government's entitlement to forfeiture is limited to the proceeds of the discrete violations for which Maye was convicted and the property that he used to facilitate his crimes. Accordingly, this Court will grant the government's request for entry of a preliminary order of forfeiture, but not in the amount requested.

## II. BACKGROUND

On April 29, 2010, a federal grand jury returned a 34-count Second Superseding

Indictment against Maye.  (Docket No. 82.)  Count 1 charged Maye with conspiring to distribute and dispense controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice, and conspiring to use communication facilities to facilitate the commission of felony violations, all in violation of 21 U.S.C. § 846. Counts 2-34 charged Maye with 33 separate acts of distributing and dispensing controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice, in violation of 21 U.S.C. § 841 (a)(1).  The Second Superseding Indictment also included a forfeiture count, which sought the forfeiture of currency, vehicles, computers, and real property, for each offense of conviction, pursuant to 21 U.S.C. § 853.  (Docket No. 82.)

The indictment stemmed from a combined investigation by the U.S. Drug Enforcement Administration and the U.S. Food and Drug Administration into Maye's practice of prescribing controlled substances over the Internet through online pharmacies. In March 2004, Maye advised the New York State Office of Professional Medical Conduct ("OPMC") that he would be resuming the practice of medicine, after previously having been suspended by the OPMC due to a criminal conviction under federal law.  Maye advised OPMC that he would be engaged as a "telemedicine consultant" to provide medical consultations by telephone and online to customers seeking to obtain medications over the Internet.  Maye further advised that he would establish bona fide physician-patient relationships with his customers, as required by state licensor.

Thereafter, Maye embarked on his "telemedicine consultant" career. Working from his residence, Maye fielded telephone calls and Internet communications from customers seeking prescriptions for controlled substances to be filled by associated online

pharmacies. Customers placed orders with online pharmacies and completed questionnaires, which were then referred to Maye for authorization. Working with an assistant, Maye conducted patient interviews, obtained medical histories, reviewed and requested patient files, and approved or denied prescription requests, all by telephone and online. Maye transmitted approved prescriptions to online pharmacies, which then processed the orders and delivered the controlled substances to customers. Maye received $10 per order that he reviewed, whether he approved or denied it. He never personally met, consulted with, or examined any patients.

Trial began on September 20, 2013, and concluded on October 8, 2013. Upon the close of the government's proof, this Court granted Maye's Rule 29 motion as to Count 1 (conspiracy) and denied it as to the remaining counts in the indictment. (Docket No. 245.) The jury subsequently found Maye guilty on Counts 2-34 (the individual substantive offenses). (Docket No. 252.) Following the verdict, Maye timely filed a motion for judgment of acquittal or, alternatively, for a new trial, which this Court denied on April 8, 2014. (Docket No. 291.)

On November 7, 2013, the government filed its motion for entry of a preliminary order of forfeiture. (Docket No. 268.) Briefing concluded on January 6, 2014, at which time this Court took the motion under advisement without oral argument.

In support of its motion, the government filed the affidavit of Joseph Cowell, Diversion Investigator for the United States Drug Enforcement Administration. (Docket No. 268-1.) Cowell analyzed Maye's financial records from 2004 – 2006 (the dates charged in the conspiracy count) to develop the government's forfeiture position. He maintains that Maye diverted income from the online pharmacies for which he consulted to a

Canandaigua National Bank and Trust account held in his wife's name. (Cowell Aff., ¶¶ 5, 6.) The government previously seized $52,190.97 from that account, which it seeks to forfeit in addition to the other proceeds of Maye's crimes. (Cowell Aff., ¶ 3.) Based on tax records, Cowell concludes that Maye obtained $1,114,923 in gross proceeds from the three online pharmacies with which he was associated, a figure that Maye does not dispute. (Cowell Aff., ¶¶ 7 – 12; Declaration of Reetuparna Dutta, Docket No. 273-1, ¶ 8.)

After various adjustments to eliminate double-counting, to credit legitimate income, and to correct errors identified by defense counsel (see Dutta Decl., ¶¶ 9-11), the government seeks forfeiture of the $52,190.97 already seized and a money judgment of $720,720.00. (Government's Reply Memorandum, p. 5.) The government also seeks forfeiture of Maye's 2001 Porsche Carrera and his 2002 Lexus RX300, as derived from proceeds of his crimes, as well as the computers he used to run his "telemedicine consultant" business, as property used to commit or facilitate his crimes. (Cowell Aff., ¶¶ 15 – 19.) The government has abandoned its requests to forfeit Maye's residence and two laptop computers. (See Government's Memorandum of Law, Docket No. 268, p. 4.)

### III. DISCUSSION

**A.    Legal Standards Governing Criminal Forfeiture**

Criminal forfeiture, as an aspect of sentencing, is distinct from the determination of criminal guilt, and for that reason, proof beyond a reasonable doubt is not required, nor is there a constitutional right to have forfeiture determined by a jury. See Libretti v. United States, 516 U.S. 29, 49, 116 S.Ct. 356, 367-68, 133 L.Ed.2d 271, 289 (1995). Rather, after a defendant is convicted, the government must establish that the property at issue is

subject to criminal forfeiture only by a preponderance of the evidence. See United States v. Capoccia, 503 F.3d 103, 116 (2d Cir. 2007) ("Sentencing courts determine forfeiture amounts by a preponderance of the evidence.") (citing United States v. Fruchter, 411 F.3d 377, 383 (2d Cir. 2005)).

The court is tasked with determining "what property is subject to forfeiture under the applicable statute" based on the evidence of record, including trial evidence, and evidence developed at a forfeiture hearing, if any. FED. R. CRIM. P. 32.2(b)(1)(A); United States v. Peters, 732 F.3d 93, 98 (2d Cir. 2013); Capoccia, 503 F.3d at 109-110. For the forfeiture of specific property, "the court must determine whether the government has established the requisite nexus between the property and the offense." FED. R. CRIM. P. 32.2(b)(1)(A). For imposition of a personal money judgment, "the court must determine the amount of money that the defendant will be ordered to pay." Id.

Here, the government must satisfy the requirements of the criminal forfeiture provisions in 21 U.S.C. § 853 (a)(1) and (2), which are as follows:

> Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law –
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation;
>
> . . .

These forfeiture provisions must be liberally construed to effectuate their remedial

purposes. See 21 U.S.C. § 853(o). In addition, there is a rebuttable presumption that property acquired during the period of the criminal conduct or within a reasonable time thereafter is subject to forfeiture if there is no likely source other than the criminal conduct at issue. See 21 U.S.C. §853 (d).

If the court finds that property is subject to forfeiture, it must enter a preliminary order of forfeiture setting forth the amount of any money judgment or directing the forfeiture of specific property without regard to any third party interests, which are determined in an ancillary proceeding under Rule 32.2(c). FED. R. CRIM. P. 32.2(b)(2)(A).

Finally, no order of forfeiture may issue without proper notice to the defendant. See FED. R. CRIM. P. 7(c)(1) and 32.2(a).

**B.      Forfeiture of Proceeds from the Crimes**

As alleged proceeds of his crimes, the government seeks a money judgment against Maye for $720,720 and forfeiture of the $52,190.97 already seized. This represents Maye's earnings (with some adjustments) between 2004 and 2006, the period of the conspiracy charged in Count 1 of the Second Superseding Indictment. The government also seeks forfeiture of Maye's 2001 Porsche Carrera and his 2002 Lexus RX300, as property derived from the proceeds of Maye's crimes.

The government argues that it is entitled to such broad forfeiture because Maye's only source of income between 2004 and 2006 was his illegal practice of distributing controlled substances through the online pharmacies, as represented in the 33 counts of conviction. It maintains that forfeiture is appropriate despite Maye's acquittal on the conspiracy charge because Maye nonetheless engaged in the same scheme with each prescription he reviewed. It further argues that limiting forfeiture to only the proceeds Maye

obtained as a result of his specific counts of conviction would undermine the purpose of the forfeiture statutes.

Maye opposes the government's forfeiture request and maintains that the only proceeds subject to forfeiture are those that he obtained from his 33 separate convictions, which would be $330 ($10 per prescription). Maye argues that because he was not convicted of a conspiracy or charged under a statute criminalizing schemes or enterprises, the government's overly-broad forfeiture request must be rejected. Alternatively, Maye argues that granting the government's forfeiture request would violate the Excessive Fines Clause of the Eighth Amendment.

The United States Court of Appeals for the Second Circuit has held that "where the government has alleged discrete violations of a statute that does not criminalize a scheme, conspiracy, or enterprise, the government is not entitled to forfeiture of proceeds from uncharged violations regardless of whether they and the charged violations are part of a common scheme." Capoccia, 503 F.3d at 110. Such is the case here: in Counts 2 – 34, the government alleged discrete violations of 21 U.S.C. § 841 (a)(1), which does not criminalize a scheme, conspiracy, or enterprise. Although Maye was charged with conspiracy in Count 1, he was acquitted of that charge. Consequently, when determining forfeiture, this Court must look to Maye's individual counts of conviction, which each fall under 21 U.S.C. § 841 (a)(1). See FED. R. CRIM. P. 32.2(b)(1)(A).

Twenty-one U.S.C. § 841 (a)(1) makes it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. The government charged (and the jury convicted) Maye of 33 discrete violations of this statute. To secure a conviction on each

count, the government proved beyond a reasonable doubt that (1) Maye dispensed or distributed a controlled substance, (2) he did so knowingly and intentionally, and (3) he did so other than for a legitimate medical purpose and not in the usual course of medical practice.  See 3 L. Sand et al., Modern Federal Jury Instructions – Criminal, ¶ 56.02, at Instruction 56–15 (2013).  Proof of a scheme or enterprise was not required, nor did the government charge a scheme or enterprise in Counts 2-34.

Nonetheless, the government maintains that Maye's uncharged continuous and repetitive illegal acts of approving prescriptions as his sole source of income between 2004 and 2006 should be considered to effectuate the remedial purposes of forfeiture.  See 21 U.S.C. § 853(o).  This, however, is the exact argument rejected in Capoccia.  The Second Circuit unequivocally held that the government was not entitled to widespread forfeiture based on uncharged violations "*regardless of whether [the uncharged violations] and the charged violations are part of a common scheme.*"  503 F.3d at 110 (emphasis added).  Thus, even assuming that Maye engaged in similar, uncharged illegal conduct, the Second Circuit's holding in Capoccia bars forfeiture of those proceeds as lacking the necessary nexus to the counts of conviction.

Accordingly, based on Capoccia, this Court finds that the government is entitled to only $330 in forfeiture, which represents the proceeds from Maye's 33 counts of conviction.  The government's request for forfeiture or a money judgment in excess of $330 is denied, as is its request for forfeiture of Maye's vehicles, which the government has not sufficiently proven were obtained with the $330 in proceeds from Maye's crimes.

## C. Forfeiture of Property used to Facilitate the Crimes

Maye does not challenge the government's request to forfeit three Dell computer towers seized from his residence. Based on the trial evidence and the Cowell Affidavit, this Court finds by a preponderance of the evidence that Maye used the computer towers to commit or facilitate the commission of his crimes. They are therefore subject to forfeiture under 21 U.S.C. § 853 (a)(2) and the government's request is granted.

## D. The Eighth Amendment

Punitive criminal forfeiture is subject to proportionality review under the Excessive Fines Clause of the Eighth Amendment. See United States v. Bajakajian, 524 U.S. 321, 333-34, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). "The amount of the forfeiture must bear some relationship to the gravity of the offence that it is designed to punish." Id. at 334. Forfeiture is unconstitutionally excessive if "it is grossly disproportional to the gravity of a defendant's offense." Id. at 334; see also United States v. Varrone, 554 F.3d 327, 331 (2d Cir. 2009).

The United States Supreme Court has instructed district courts to "compare the amount of the forfeiture to the gravity of the defendant's offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." Bajakajian, 524 U.S. at 336-37. Four factors inform this determination: (1) the "essence" of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could be imposed, and (4) the harm caused by defendant's criminal conduct. See Bajakajian, 524 U.S. at 337-39; see also Varrone, 554

F.3d at 331 (applying Bajakajian factors); United States v. Collado, 348 F.3d 323, 328 (2d Cir. 2003) (per curiam) (same); United States v. Sabhnani, 566 F.Supp.2d 148, 155 (E.D.N.Y. 2008) (same); United States v. Rudaj, 2006 WL 1876664, at *7 (same).

Because the forfeiture amount consists entirely of proceeds Maye obtained as a result of his criminal conduct, there is some question as to whether forfeiture is even punitive in this context, such that the proportionality analysis applies at all. See, e.g., Rudaj, 2006 WL 1876664, at *8 (collecting cases and noting that "[s]everal courts of appeal concluded since Bajakajian that the forfeiture of proceeds, as opposed to legally acquired property later involved in a criminal offense, does not implicate Eighth Amendment concerns of disproportionality.") Even assuming that it does, this Court finds that application of the Bajakajian factors results in a finding that the forfeiture here is not grossly disproportionate to the gravity of Maye's criminal conduct, particularly because Maye concedes that he earned $10 for each of the crimes of conviction. (Dutta Decl., ¶ 11.)

## IV. CONCLUSION

For the reasons stated above, this Court finds that the government is entitled to forfeiture of $330, pursuant to 21 U.S.C. § 853 (a)(1), and three Dell computer towers, pursuant to 21 U.S.C. § 853(a)(2), as a result of Maye's crimes of conviction. The government's request for entry of a preliminary order of forfeiture is therefore granted in part and denied in part, and the government is directed to submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of its filing date.

## V. ORDERS

IT HEREBY IS ORDERED, that the government's Request for Entry of a Preliminary

Order of Forfeiture (Docket No. 268) is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that the government shall submit a proposed preliminary order of forfeiture consistent with this decision within 10 days of its filing date.

SO ORDERED.

Dated:  April 23, 2014
        Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                  Chief Judge
                                          United States District Court